UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TURY DOMINGUEZ,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>S. ROCHA, et al.,<br><br>　　　　Defendants. | Case No.: 1:10-cv-00364-AWI-BAM (PC)<br><br>FINDINGS AND RECOMMENDATIONS REGARDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT<br>(ECF No. 33)<br><br>THIRTY-DAY DEADLINE |

**I.   Background**

Plaintiff Tury Dominguez ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. This action proceeds on Plaintiff's first amended complaint, filed December 17, 2010, against Defendants M. Ruff, P. R. Jones, and Everett W. Fisher for a violation of due process.

Currently pending before the Court is Defendants' motion for summary judgment filed on October 18, 2011.[1] (ECF No. 33.) Plaintiff did not file an opposition. The motion is deemed submitted. Local Rule 230(l).

---

[1] Concurrent with the motion, Plaintiff was provided with notice of the requirements for opposing a motion for summary judgment. (ECF No. 33-1); see Woods v. Carey, 684 F.3d 934 (9th Cir. 2012); Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1988); Klingele v. Eikenberry, 849 F.2d 409, 411-12 (9th Cir. 1988).

1

II.     **Legal Standard for Summary Judgment**

Pursuant to Federal Rule of Civil Procedure 56(a) summary judgment is appropriate when the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Summary judgment must be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  However, the court is to liberally construe the filings and motions of pro se litigants.  Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010).  The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."  Celotex, 477 U.S. at 323 (internal quotations and citations omitted).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11.

The parties bear the burden of supporting their motions and oppositions with the papers they wish the Court to consider and/or by specifically referencing any other portions of the record for consideration.  Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1031 (9th Cir. 2001). The Court will not undertake to scour the record for triable issues of fact.  Simmons v. Navajo County, Arizona, 609 F.3d 1011, 1017 (9th Cir. 2010).

In arriving at these findings and recommendations, the Court carefully reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any, objections, and other papers filed by the parties.  Omission of reference

to an argument, document, paper, or objection is not to be construed to the effect that this Court did not consider the argument, document, paper, or objection. This Court thoroughly reviewed and considered the evidence it deemed admissible, material, and appropriate.

### A.     Summary of Relevant Allegations in First Amended Complaint

On May 8, 2008, Plaintiff appeared before the Institutional Classification Committee ("ICC") for annual review. At that time, Plaintiff was sentenced to an indeterminate SHU term for being an alleged active gang associate of the Mexican Mafia ("EME"). The ICC relied on a CDCR 128-B2 (Gang Validation/Rejection Review) dated March 8, 2006, and prepared by Defendants Ruff, Jones and Fisher. The most recent source item on the report indicating any type of involvement with the EME was dated January 27, 2006.

The source item of January 27, 2006 of EME involvement was effectively undermined by subsequent corroborating information. According to a confidential CDCR 128B dated July 15, 2006, Plaintiff was identified as a victim receiving approximately 50 puncture words. Further, according to a confidential memorandum dated January 22, 2008, Plaintiff was in bad standing with the EME and had been identified as being on a current EME "hit list." Plaintiff alleges that based on this information, the ICC abused its discretion when it imposed an indeterminate SHU term upon Plaintiff for being an active gang associate.

Following screening, the Court determined that Plaintiff's allegation that Defendants Ruff, Jones, and Fischer prepared the report finding Plaintiff to be a gang associate while later confidential memos demonstrated that he was not currently a gang associate was sufficient to state a cognizable due process claim. (ECF No. 13.)

### B.     Statement of Undisputed Material Facts ("UMF")

Despite receiving notice of the requirements for opposing summary judgment, Plaintiff failed to file an opposition to the motion for summary judgment. Plaintiff also failed to file a separate statement of disputed facts or statement admitting or denying the facts set forth by Defendants as undisputed. Local Rule 260(b). Accordingly, Defendants' statement of undisputed facts is accepted except where brought into dispute by Plaintiff's verified first amended complaint. Jonas v. Blanas,

393 F.3d 918, 923 (9th Cir. 2004) (verified complaint may be used as an opposing affidavit if it is based on pleader's personal knowledge of specific facts which are admissible in evidence).

1. Plaintiff is a state inmate, housed at California State Prison, Corcoran in the Security Housing Unit (SHU). (Plaintiff's Deposition ("Pl.'s Dep.") 10:5-12.)
2. Plaintiff is housed in the SHU because he was validated as an associate of the Sureños prison gang. (Pl.'s Dep. 10:8-21.)
3. Plaintiff is suing Defendants Ruff, Fischer and Jones for validating him as an associate of the Mexican Mafia (EME) prison gang on March 8, 2006. (ECF No. 10, pp. 3-4.)
4. Plaintiff claims that the evidence used to validate him was not reliable and was undermined by later evidence that he was in bad standing with EME and on an EME hit list. (ECF No. 10, p. 4; Pl's Dep. 50:6-51:18.)
5. The term "prison-gang" refers to those gangs that originated in prisons. The internal threat posed by prison-gangs to the institution is severe. Prison-gangs are heavily organized, and the goals of prison-gangs include assaults on staff and disruption of prison security. (Declaration of G. Parker ("Parker Dec.") ¶¶ 3, 5.)
6. Because of the threat to institutional safety and security, whenever an inmate is validated as a prison gang member or associate, the inmate is immediately transferred or re-housed to an area of the institution which is segregated from general population inmates. Validated prison-gang members are deemed to be a severe threat to the safety and security of the institution. The segregation of the prison gang member or associate restricts the inmate's ability to further promote, or participate in gang activities, which in turn makes the institution safer. (Parker Dec. ¶¶ 3, 5.)
7. Being on an EME hit list or a victim of an EME-directed assault does not exclude Plaintiff, or any inmate, from being an EME associate. A gang member or associate can fall into disfavor with his gang for many reasons, including internal power struggles, withholding profits from illegal activities, insubordination to leaders, disobeying orders, fraternizing with inmates of the "wrong race" or wrong place of origin, and providing information to prison staff or rival gang members. (Parker Dec. ¶¶ 6, 7.)

8. A gang member or associate who falls into disfavor with his gang does not cease to be a threat to institutional safety and security.  (Parker Dec. ¶ 7.)

9. A gang member or associate who falls into disfavor with his gang is often the target of assaults from the gang.  Such assaults can result in the death or injury of the targeted inmate, the assailants, innocent bystanders and intervening correctional staff.  (Parker Dec. ¶ 7.)

10. A gang member or associate in bad standing will often perform assaults or other illegal activities for the gang in an attempt to regain good standing with the gang.  (Parker Dec. ¶ 7.)

11. It is imperative that a gang member in bad standing with this gang be immediately transferred or re-housed to an area of the institution which is segregated from general population inmates.  (Parker Dec. ¶ 7.)

12. The Mexican Mafia (EME) is designated as a prison gang by the CDCR Departmental Operations Manual.  (Parker Dec. ¶ 4.)

13. EME is the controlling organization for the Southern Structure prison gang (also called the "Southern Hispanics" or "Sureños").  (Id.)

14. Before being validated as an EME associate, Plaintiff was tried by state courts and found guilty of committing four crimes while in prison:  (1) attempted murder by stabbing an inmate named Williams on June 3, 1999, (2) possession of a weapon in 2000; (3) a second attempted murder by stabbing an inmate named Nava on June 10, 2004; and (4) attempted assault with means to produce great bodily injury in 2006 (which occurred in a courthouse).  (Pl.'s Dep. 27:19-28:8, 31:18-24; 32:8-19; 32:20-33:7; 33:9-13; 35:23-36:9.)

15. Plaintiff received a CDCR 115 rules violation report (RVR) and was found guilty of stabbing an inmate named Pinado at CSP Los Angeles on October 9, 1995.  (Pl's Dep. 30:6-21.)

16. Plaintiff received an RVR and was found guilty of stabbing an inmate named Herrera on May 15, 1999.  (Pl.'s Dep. 30:24-31:17.)

17. On March 8, 2006, Defendants validated Plaintiff as an associate of EME by five independent source items: (1) a confidential memorandum dated January 27, 2006, authored by G. Parker; (2) a confidential memorandum dated March 15, 2005, authored by D. Rodriguez; (3) a confidential memorandum dated October 5, 2004, authored by D. Rodriguez; and (4) a confidential memorandum dated August 6, 2004, authored by J. Dagenais; and (5) a CDC 128b dated October 18, 2000. (Defs.' Ex. A.)

18. The confidential memorandum dated January 27, 2006, authored by G. Parker was based on a note found in Plaintiff's cell. The note contained a list (written in code) of names, monikers and locations of inmates at California State Prison, Sacramento who had been recently assaulted by affiliates of the EME. Additionally, the note contained a coded list of names, monikers and locations of inmates who had recently requested to be removed from the general population because of trouble with EME. (Parker Dec. ¶ 8, 10.)

19. The information in the note met the criteria for reliability under Title 15, section 3321(c) by corroboration by other sources, self-incrimination and through investigation. (Parker Dec. ¶ 9.)

20. The confidential memorandum dated March 15, 2005, authored by D. Rodriguez, was based on a February 10, 2005, debriefing interview with an inmate who was leaving a disruptive group because of safety concerns. This disruptive group was connected to the Southern Hispanic prison gang and EME. The inmate identified Plaintiff, Tury Dominguez (H-93787), as one of five "mesa members" in the Ad-Seg Stand-Alone yard working for inmate Michael Lerma (C-38374), a validated EME member. (Declaration of D. Rodriguez ("Rodriguez Dec.") ¶¶ 4, 7.)

21. The inmate interviewed by Rodriguez had knowledge of Southern Hispanic prison gang and EME. He provided the location of an inmate manufactured weapon which was found exactly where he described. He also provided the identity of an EME member in the facility which was corroborated by other sources. (Rodriguez Dec. ¶ 5.)

22. The information provided by the inmate met the criteria for reliability under Title 15, section 3321(c) by corroboration by other sources, self-incrimination and through investigation. (Rodriguez Dec. ¶ 6.)

23. The confidential memorandum dated October 5, 2004, authored by D. Rodriguez was based on information from a debriefing interview. The inmate stated in the interview that Plaintiff carried out an assault ordered by validated EME member Alfred Salinas (T-95764). (Rodriguez Dec. ¶¶ 8, 9, 11.)

24. The inmate was connected to the Southern Hispanic prison gang and EME. The inmate gave the names of his contacts with validated EME members and described in detail how he had carried out various illegal activities for EME. (Rodriguez Dec. ¶ 8.)

25. The information provided by the inmate met the criteria for reliability under Title 15, section 3321(c) by corroboration by other sources, self-incrimination and through investigation. (Rodriguez Dec. ¶ 10.)

26. The confidential memo dated August 6, 2004, was based on a letter intercepted by J. Dagenais. Dagenais was inspecting incoming legal mail, addressed to inmate Jorge Aranda (E-68278), a validated EME member. (Declaration of K. Osborne ("Osborne Dec.") ¶¶ 2, 3.)

27. Before opening the envelope, Dagenais called the attorney listed on the return address. The attorney denied sending the letter, and said he did not know inmate Aranda. After determining that the letter was not legitimate legal mail, Dagenais opened the envelope and discovered EME gang correspondence. (Osborne Dec. ¶ 3.)

28. The correspondence Dagenais found stated that Plaintiff carried out a stabbing assault ordered by validated EME member David Valdez (H-14730) on another inmate. (Osborne Dec. ¶ 3.)

29. Dagenais verified that the victim named in the letter was in fact stabbed by Plaintiff with an inmate manufactured weapon, under circumstances consistent with the letter. (Osborne Dec. ¶ 4.)

30. The information provided by the letter met the criteria for reliability under Title 15, section 3321(c) because part of the information provided was corroborated through investigation or by information provided by non-confidential sources. (Osborne Dec. ¶ 5.)

31. The CDC 128-B dated October 18, 2000, was based on an address book found in Plaintiff's possession that contained the names, CDC numbers and addresses of validated EME members and associates. (Defs.' Ex. B.)

32. Plaintiff admitted in his deposition that the address book was his, but he denied knowing that the inmates were EME associates and members. (Pl.'s Dep. 48:16-49:22.)

33. The information provided by the 128-B met the criteria for reliability under Title 15, section 3321(c) because it was self-incrimination and part of the information provided was corroborated through investigation or by information provided by non-confidential sources.

34. On or about February 23, 2006, Officer Parker provided Plaintiff with copies of form CDC 1030 Confidential Information Disclosure Form. (Parker Dec. ¶ 11; Defs.' Ex. C.)

## III. Discussion

### A. Plaintiff's Due Process Claim

Plaintiff claims that his placement on indeterminate SHU status violates due process because the decision by Defendants to validate him as an active gang associate was not supported by the evidence.

Due process guarantees that the decision to place an inmate on indeterminate SHU status based on gang validation be supported by "some evidence." Castro v. Terhune, 712 F.3d 1304, 1314 (9th Cir. 2013); Bruce v. Ylst, 351 F.3d 1283, 1287 (9th Cir. 2003). This standard is "minimally stringent." Powell v. Gomez, 33 F.3d 39, 40 (9th Cir.1994). In determining whether the standard is satisfied, the court does "not examine the entire record, independently assess witness credibility or reweigh the evidence." Castro, 712 F.3d at 1314, quoting Bruce, 351 F.3d at 1287. Instead, "the relevant question is whether there is any evidence in the record that could support the conclusion reached." Bruce, 351 F.3d at 1287 (quotation and citation omitted). Thus, the evidence relied upon to validate an inmate and confine him to the SHU must have "some indicia of reliability" to satisfy due process requirements. Castro, 712 F.3d at 1314 (evidence must bear "some indicia of reliability" to be

considered "some evidence"); Bruce, 351 F.3d at 1288 (finding, under "some evidence" standard, any one of three pieces of evidence would have sufficed to support validation of an inmate as a gang member because each had sufficient indicia of reliability); Madrid v. Gomez, 889 F.Supp. 1146, 1273-74 (N.D. Cal. 1995). "[E]vidence may qualify as 'some evidence' even if it does not logically preclude any conclusion but the one reached." Castro, 712 F.3d at 1314 (citations and internal quotations omitted).

Here, the decision to validate Plaintiff as an active gang associate in 2006 and to confine him in the SHU was based on five "source items" or pieces of evidence: (1) a confidential memorandum dated January 27, 2006, authored by G. Parker; (2) a confidential memorandum dated March 15, 2005, authored by D. Rodriguez; (3) a confidential memorandum dated October 5, 2004, authored by D. Rodriguez; (4) a confidential memorandum dated August 6, 2004, authored by J. Dagenais; and (5) a CDC 128 b dated October 18, 2000. (Defs.' Ex. A.)

The January 27, 2006 confidential memorandum provided some evidence of Plaintiff's gang affiliation because it was based on evidence of a coded note found in Plaintiff's cell. The coded note contained a list of inmates who had been recently assaulted by affiliates of the EME and of inmates who had recently requested to be removed from the population because of trouble with the EME. (UMF No. 18.) That the list was in Plaintiff's possession and coded is sufficient indicia of its reliability.

The March 15, 2005 and October 5, 2004 confidential memoranda also provide some evidence of Plaintiff's gang affiliation as they were both based on debriefing interviews with inmates who provided personal knowledge of Plaintiff's involvement in gang related activities. The March 15, 2005 memorandum was based on a debriefing interview with an inmate who was leaving a disruptive group and identified Plaintiff as one of five "mesa members" working for a validated EME member. The inmate's information had sufficient indicia of reliability because he had knowledge of the Southern Hispanic prison gang and EME, and also provided the identity of an EME member in the facility that was corroborated by other sources. (UMF Nos. 20, 21.) The October 5, 2004 memorandum was based on a debriefing interview with an inmate leaving the Southern Hispanic prison gang and EME. The inmate reported that Plaintiff carried out an assault ordered by a validated

9

EME member. The inmate's information had sufficient indicia of reliability because he also gave the names of his own contacts with validated EME members and described in detail how he had carried out various illegal activities.[2] (UMF Nos. 23, 24.)

The confidential memorandum dated August 6, 2004 also provides some evidence of Plaintiff's gang affiliation because it was based on a letter disguised as legal mail and was intercepted. The letter stated that Plaintiff carried out a stabbing assault ordered by a validated EME member. The letter itself had sufficient indicia of reliability because it was disguised and the victim named in the letter was stabbed by Plaintiff under circumstances consistent with the letter. (UMF Nos. 26-29.)

Additionally, the CDC 128-B dated October 18, 2000 meets the some evidence standard as it was based on Plaintiff's own address book. The address book was found in Plaintiff's possession and contained the names, prison numbers and addresses of validated EME members and associates. The evidence had some indicia of reliability because the names in the address book were corroborated by other sources as being validated EME members and associates and Plaintiff admitted to owning the book. (UMF Nos. 31-33.)

Any one of these pieces of evidence would have sufficed to support Plaintiff's validation because each has "sufficient indicia of reliability." Bruce, 351 F.3d at 1287, 1288. The possibility that these items could support a competing inference would not affect this determination. Castro, 712 F.3d at 1314.

Plaintiff has not challenged either the existence or the underlying reliability of these source items. Rather, Plaintiff alleges that these items are undermined by other evidence arising after his 2006 validation, but at the time of a purported annual review in 2008, that he was the victim of a stabbing in July 2006, and in bad standing with the EME and on an EME hit list in January 2008. Based on this evidence, Plaintiff contends that the ICC abused its discretion by imposing an indeterminate SHU term for "being an <u>active</u> gang associate." (ECF No. 10; Pl.'s First Amend.

---

[2] When information is obtained from confidential informants, the record must contain some factual information to reasonably conclude that the information was reliable and the prison official's affirmative statement that safety considerations prevent disclosure of the inmate's name. See Zimmerlee v. Keeney, 831 F.2d 183, 186 (9th Cir. 1987). Here, the reports relying on debriefing inmates meet the standard of reliability because safety considerations prevent disclosure and the debriefing inmates supplied other reliable information. (Rodriguez Decl. ¶¶ 5, 6, 9, 10.)

Compl. ¶ 7) (emphasis in original).  In short, Plaintiff alleges that his due process rights were violated because he was not an active gang associate.

Contrary to Plaintiff's allegations, prison regulations do not require that an inmate actually be involved in unlawful gang activity in order to be validated as an active gang member or associate. Pursuant to the California Code of Regulations, current gang activity is defined as "any documented gang activity within the past six years."  Cal. Code Regs. tit. 15, § 3378(c)(1).  Gang activity occurs when inmates "knowingly promote, further or assist any gang."  Cal. Code Regs. tit. 15, § 3023(a). An inmate may be authorized for release from the SHU once categorized as inactive.  Cal. Code Regs. tit. 15, § 3341.5(c)(5).  "Inactive" means an inmate who "has not been involved in gang activity for a minimum of six (6) years."  Id.  Thus, under the relevant regulations, an inmate who, in the past six years, has knowingly promoted, furthered or assisted a gang, may be deemed an active gang member or associate and retained in the SHU.

Plaintiff has presented no evidence showing that he was not involved in gang activity at the time of his validation or that he had not been involved in gang activity for a period of six years prior to the date of his review in 2008.  At best, Plaintiff has claimed that he was not involved in gang activity beginning in July 2006, which is not prior to the validation by Defendants in March 2006 or six years prior to the alleged review in 2008.[3]  Defendants also have presented evidence that being in "bad standing" or on an EME hit list would not exclude Plaintiff, or any inmate, from being an EME associate or make him "inactive."  (UMF Nos. 7, 10.)

Based on the above, the Court finds Plaintiff has failed to create a triable issue with respect to the constitutional adequacy of the evidence relied upon to validate him as a gang associate. Specifically, prison officials had "some evidence" with the requisite indicia of reliability before they validated Plaintiff and retained him in the SHU.  Bruce, 351 F.3d at 1288

///

---

[3]  At least one district court has found a plaintiff's complaint that he is not in fact an active associate of a gang, even if true, does not amount to a due process violation.  Stitt v. Wilber, 2012 WL 4801643, at *2 (N.D.Cal. Oct.9, 2012).  In so deciding, the court reasoned that "the fact that a prisoner may have been placed incorrectly in administrative segregation does not raise a due process issue; the Constitution demands due process, not error-free decision-making. Id. (citing Richer v. Leapley, 25 F.3d 1406, 1410 (8th Cir.1994)).

### B. Qualified Immunity

Defendants contend that they are entitled to qualified immunity on Plaintiff's due process claim because, based on the information they had at the time, they reasonably believed Plaintiff was an EME associate.

The doctrine of qualified immunity protects government officials from civil liability where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231, 129 S.Ct. 808, 815, 172 L.Ed.2d 565 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Ashcroft v. al-Kidd, ––– U.S. ––––, ––––, 131 S.Ct. 2074, 2085, 179 L.Ed.2d 1149 (2011) (citations omitted). To determine if an official is entitled to qualified immunity the court uses a two part inquiry. Saucier v. Katz, 533 U.S. 194, 200, 121 S.Ct. 2151, 2155, 150 L.Ed.2d 272 (2001), overruled in part by Pearson v. Callahan, 555 U.S. at 236, 129 S.Ct. at 818. The court determines if the facts as alleged state a violation of a constitutional right and if the right is clearly established so that a reasonable official would have known that his conduct was unlawful. Ashcroft, 131 S.Ct. at 2080. This does not require that the same factual situation must have been decided, but that existing precedent would establish the statutory or constitutional question beyond debate. Id. at 2083; Mattos v. Agarano, 661 F.3d 433, 442 (9th Cir.2011). The inquiry as to whether the right was clearly established is "solely a question of law for the judge." Dunn v. Castro, 621 F.3d 1196, 1199 (9th Cir.2010) (quoting Tortu v. Las Vegas Metro. Police Dep't., 556 F.3d 1075, 1085 (9th Cir.2009) ). District courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Pearson, 555 U.S. at 236, 129 S.Ct. at 818.

As noted, the Court finds that Defendants' conduct did not violate Plaintiff's constitutional rights. The Court therefore finds that they are entitled to qualified immunity.

### IV.    Conclusion and Recommendation

For the reasons discussed above, the Court HEREBY RECOMMENDS as follows:

1. Defendants' motion for summary judgment, filed on December 28, 2012, be GRANTED;

    2. Summary judgment be GRANTED in favor of Defendants Ruff, Fischer and Jones and against Plaintiff; and

    3. Judgment be entered accordingly.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **September 23, 2013**            /s/ *Barbara A. McAuliffe*
                                                               UNITED STATES MAGISTRATE JUDGE